**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com
*- additional counsel on signature page -*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KODGI AHMED, Individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| vs. | |
| ENDOLOGIX, INC., JOHN MCDERMOTT, and VASEEM MAHBOOB, | **JURY TRIAL DEMANDED** |
| Defendants | |

Plaintiff Kodgi Ahmed ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United

States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Endologix, Inc. ("Endologix" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Endologix between August 2, 2016 and November 16, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

2

4.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants conduct business and operate facilities in this district, and a significant portion of the Defendants' actions, and the subsequent damages, took place within this Judicial District.

5.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.    Plaintiff, as set forth in the accompanying Certification, purchased Endologix securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7.    Defendant Endologix develops, manufactures, markets, and sells medical devices for the treatment of abdominal aortic aneurysms in the United States and internationally. The Company is incorporated in Delaware and its principal executive offices are located at 2 Musick, Irvine, California. Endologix securities are traded on NASDAQ under the ticker symbol "ELGX."

8.    Defendant John McDermott ("McDermott") has served as the Chief Executive Officer ("CEO") of Endologix since May 2008.

9.    Defendant Vaseem Mahboob ("Mahboob") has served as the Chief Financial Officer ("CFO") and Corporate Secretary of Endologix since January 15, 2015.

10.   Defendants McDermott and Mahboob are sometimes referred to herein as the "Individual Defendants."

11.   Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

4

12.    The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14.    The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## Background

15.    Endologix's products are intended for the minimally invasive endovascular treatment of abdominal aortic aneurysms. One of the Company's products is built on the platform of endovascular sealing ("EVAS"). Endologix's current EVAS product is the Nellix® EndoVascular Aneurysm Sealing System ("Nellix EVAS System").

16.    The Nellix EVAS System is currently engaged in the U.S. Food and Drug Administration ("FDA") premarket approval process (the "PMA process"), which requires Endologix to collect and submit nonclinical and human clinical data on Nellix EVAS System for its intended use to demonstrate that it is safe and effective. In the PMA process, the FDA will approve the medical device and thereby authorize its commercial distribution in the U.S. if it determines that the probable benefits outweigh

5

the risks for the intended patient population, and, therefore, makes a determination of reasonable assurances of safety and effectiveness.

17.    In December 2013, Endologix received Investigational Device Exemption ("IDE") approval in the United States to begin a clinical trial for the Nellix EVAS System, which commenced in January 2014 (the "IDE Study"). Enrollment in the IDE study was completed in November 2014. In the third quarter of 2015, Endologix obtained IDE continued access approval for additional patients.

18.    On May 26, 2016, Endologix reported purportedly positive clinical data from the IDE Study and submitted the results to the FDA as part of the PMA process for the Nellix EVAS System.

### SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

19.    On August 2, 2016, during aftermarket hours, the Company held a conference call with investors to discuss the Company's financial results for the quarter ended June 30, 2016 (the "Q2 2016 Conference Call"). During the Q2 2016 Conference Call, Defendant McDermott stated that "we remain very positive about the likelihood of approval [for Nellix EVAS System] and the significant growth we expect to drive with Nellix."

20.    During the Q2 2016 Conference call, Defendant McDermott assured investors that no issues exist with the data from the IDE Study, stating in pertinent part:

6

**Matt Blackman**

Okay, that's very helpful. And I'm going flip in one last question back on the panel. I'm sure you're eager to provide the intimate details of your FDA discussions…But maybe give us a little bit more color, more sense of comfort that there is not something else going on, there is no sort of red flag raised in terms of data that they saw. I guess, anything that you could give us that, gives us any comfort there would be helpful? Thank you.

**John McDermott**

Sure. So, the three reasons that the agency will typically consider sending a device to panel is one; if there is, any new clinical issues of safety efficacy and obviously **everyone has seen the data so we know there aren't any issues there.** The second reason is if they feel - the FDA feels they don't have the clinical or technical expertise to complete the review of a PMA, that's not the case. So and the third is if it's novel technology.

(Emphasis added.)

21.    During the Q2 2016 Conference call, Defendant McDermott indicated that none of the questions the FDA posed to the Company detracted from the approvability of the device, stating in pertinent part:

**Joanne Wuensch**

Hi. Can we talk a little bit about what type of additional data or questions that you're receiving? I mean, is there any way to give us some information regarding that?

**John McDermott**

Yes, I don't want to get too detailed with that Joanne. What I can tell you, is that **none of the questions we got asked are what I would characterize as big surprises**. There is clarification on some things, some requests for additional analysis, some additional testing. **Nothing that would suggest in our view any question or risk of approvability, just some more blocking and tackling and clarification of the data we submitted**.

7

**So, we don't see anything in there that's given us heartburn**. It will just take a little time to pull it altogether. And we'd also like to take another run at this novelty question and see if we can provide the agency with enough evidence that the device isn't novel so that we don't have to go to panel. So that would be the focus of the work we do over the next few months.

(Emphasis added.)

22.     During the Q2 2016 Conference call, Defendant McDermott stated that, based on a meeting with the FDA, the Company has the requisite clinical data for approval of the Nellix EVAS System, stating in pertinent part:

Yes. We didn't get that impression from the meeting. So, they basically said listen, we understand why you made the enhancements. And it looks like they're all good enhancements. We just would like to see some clinical data for that device. And since going back to say well, that timeline is not interesting to us, **you've got the clinical data you need on the IDE device, we'll pursue approval for that and follow with a supplement.**

(Emphasis added.)

23.     On August 5, 2016, the Company filed a Form 10-Q for the quarter ended June 30, 2016 (the "2Q 2016 10-Q") with the SEC, which provided the Company's second quarter 2016 financial results and position and stated that the Company's disclosure controls were effective as of June 30, 2016. The 2Q 2016 10-Q was signed by Defendants McDermott and Mahboob. The 2Q 2016 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants

8

McDermott and Mahboob attesting to the accuracy of financial reporting and the disclosure of all fraud.

24.     On November 1, 2016, during aftermarket hours, the Company held a conference call with investors to discuss the Company's financial results for the quarter ended September 30, 2016 (the "Q3 2016 Conference Call"). During the Q3 2016 Conference Call, Defendant McDermott touted the Company's positive interaction with the FDA, stating in pertinent part:

> **John McDermott**
> In terms of the U.S. PMA, we achieved the clinical endpoints in the IDE share dilated clinical data with FDA. We've also provided them with our updated patient selection criteria and **have had positive discussion so far**. Nellix PMA approval time lines are unchanged although we think a panel is more likely now given the updated indications.

(Emphasis added.)

25.     On November 8, 2016, the Company filed a Form 10-Q for the quarter ended September 30, 2016 (the "3Q 2016 10-Q") with the SEC, which provided the Company's third quarter 2016 financial results and position and stated that the Company's disclosure controls were effective as of September 30, 2016. The 3Q 2016 10-Q was signed by Defendants McDermott and Mahboob. The 3Q 2016 10-Q contained signed SOX certifications by Defendants McDermott and Mahboob attesting to the accuracy of financial reporting and the disclosure of all fraud.

26.     The statements referenced in ¶¶ 19-25 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse

facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Endologix did not have the requisite clinical data for FDA premarket approval of the Nellix EVAS System; and (ii) as a result, Endologix's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

27.    On November 16, 2016, before market hours, Endologix issued a press release entitled "Endologix Provides Update on Nellix PMA Process," revealing "that the U.S Food and Drug Administration (FDA) has requested the Company provide 2-year patient follow-up data from the EVAS-FORWARD IDE Study of the Nellix® EndoVascular Aneurysm Sealing System (Nellix EVAS System)."

28.    On this news, Endologix's share price fell $2.02, or over 20.5%, from its previous closing price, to close at $7.82 on November 16, 2016, damaging investors.

29.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

30.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

10

otherwise acquired Endologix securities publicly traded on the NASDAQ during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Endologix securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

- whether the prices of Endologix securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

12

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

35.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Endologix securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

13

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Endologix securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

37.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

38.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I
**Violation of Section 10(b) of The Exchange Act and Rule 10b-5**
**Against All Defendants**

39.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

14

40.    This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

41.    During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42.    The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Endologix securities during the Class Period.

43.    The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the

15

Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

44.   Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

45.   As a result of the foregoing, the market price of Endologix securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of

Endologix securities during the Class Period in purchasing Endologix securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

46.    Had Plaintiff and the other members of the Class been aware that the market price of Endologix securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Endologix securities at the artificially inflated prices that they did, or at all.

47.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

48.    By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of Endologix securities during the Class Period.

**COUNT II**
**Violation of Section 20(a) of The Exchange Act**
**Against The Individual Defendants**

49.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

17

50.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

51.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

52.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Endologix securities.

18

53.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

54.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 11, 2017

Respectfully submitted,

**POMERANTZ LLP**

By: *s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:(212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ**

20

**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

21